IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL GUISEPPE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 17-4880 |
| v. | : | |
| | : | |
| WARDEN MCFADDEN, DEPUTY | : | |
| WARDEN REED, JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                                                 March 12, 2018

      The *pro se* plaintiff has commenced this action under 42 U.S.C. § 1983 against two identified county prison officials and multiple yet-unidentified county prison officials and employees in their official and individual capacities after another inmate assaulted him in the county prison. The defendants have moved to dismiss the complaint asserting that (1) the plaintiff failed to (a) identify a constitutionally protected right that they violated, (b) adequately plead a claim for municipal liability (or official capacity liability), and (c) allege direct participation or actual knowledge and acquiescence in any constitutional violation by the two identified defendants, and (2) Pennsylvania's Political Subdivision Tort Claims Act bars any claims for negligence under Pennsylvania law to the extent that the plaintiff is asserting such claims.

      Although the plaintiff filed what he identified as a response to the motion to dismiss, the document is essentially (and fortunately) a more thorough recitation of his factual allegations and legal theories. Unfortunately, the plaintiff chose to respond to the motion to dismiss in this fashion rather than by filing an amended complaint. Nonetheless, although the court must

dismiss the complaint because all of the defendants' arguments have merit insofar as the original complaint essentially asserts nothing more than facts supporting a tort claim against the assaulting inmate, the court will give the plaintiff leave to file an amended complaint. In this regard, it appears that, at a minimum, the plaintiff can assert sufficient allegations to potentially support a cause of action against at least some of the prison officials and employees for the failure to protect him from the other inmate's assault.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Christopher Michael Guiseppe ("Guiseppe"), commenced this action by filing an application to proceed *in forma pauperis*, a prisoner trust fund account statement, and a proposed complaint against the defendants, Warden McFadden, Deputy Warden Reed, and ten fictitious defendants on October 23, 2017.[1] Doc. Nos. 1, 2. Pursuant to 28 U.S.C. § 1915, the court reviewed the application and the proposed complaint and entered an order on November 7, 2017, which, *inter alia*, (1) granted the application to proceed *in forma pauperis*, and (2) directed the clerk of court to file the complaint. *See* Order at 1, Doc. No. 3. On the same date, the clerk of court docketed the complaint, which is a form complaint for actions under 42 U.S.C. § 1983. Doc. No. 6.

In the complaint, Guiseppe alleges that on April 3, 2017, he was incarcerated in the Chester County Prison. *See* Compl. at ECF p. 4, Doc. No. 6. Another inmate, Dajin Rowe ("Rowe"), who was in "Administrative Custody" and housed in the "Protective Custody Section," confronted Guiseppe at the bottom of the steps in the dayroom after overhearing a

---

[1] The federal "prisoner mailbox rule" provides that a pro se prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275-76 (1988). Although the doctrine arose in the context of habeas corpus petitions, the Third Circuit has extended it to civil actions brought under 42 U.S.C. § 1983. *See Pearson v. Secretary Dep't of Corr.*, 775 F.3d 598, 600 n.2 (3d Cir. 2015) (applying rule in section 1983 action and determining that pro se prisoner plaintiff filed complaint on date he signed it). Here, Guiseppe included a declaration with the complaint in which he states that he provided the complaint to prison authorities on October 23, 2017, for mailing to the clerk of court. *See* Compl. at ECF p. 9, Doc. No. 1-2.

conversation between Guiseppe and another inmate during which Rowe apparently believed that Guiseppe was making racial slurs toward him. *Id.* Guiseppe informed Rowe that he was not making racial slurs toward him, allegedly ended the conversation, and walked away. *Id.* Rowe then attacked Guiseppe from behind. *Id.* Upon getting hit, Guiseppe turned around and Rowe slammed his head into the steps, resulting in Guiseppe cracking a tooth. *Id.* Rowe then started punching Guiseppe in the face, head, and ribs. *Id.* Guiseppe attempted to mitigate any injuries by blocking his face with his hands, and attempted to stop Rowe's assault by grabbing Rowe's waist. *Id.* Rowe then grabbed Guiseppe's waist, pulled him along, and threw him into the dayroom phone, which apparently ended the assault. *Id.*

It appears that three other inmates witnessed the assault. *Id.* In addition, two of these inmates had to alert the guards on duty about the assault. *Id.* The assault apparently occurred less than five feet away from the guards located in the control room. *Id.* The guards responded to the assault by cuffing both Guiseppe and Rowe approximately 30 to 45 seconds after the fight ended. *Id.* Guiseppe was escorted to medical and Rowe was taken to solitary housing. *Id.*

Guiseppe describes his injuries as follows:

> Face with swelling, cut right ear, broken lower right wisdom tooth, cracked right rib. Pictures taken by Prison Staff in medical. Medical performed general check, given generic Tylenol 2 days after for 3 weeks. Ribs x-rayed 8 days later – results unknown. No further treatment.

*Id.* He is seeking $150,000 in damages against the named defendants in their official and individual capacities. *Id.* at ECF p. 6. He also appears to seek injunctive relief in the nature of a direction that the defendants place grievance forms on the block so they are accessible for inmates to use.[2] *Id.*

---

[2] In the portion of the form complaint dealing with the exhaustion of administrative remedies under the Prison Litigation Reform Act, Guiseppe acknowledges that the Chester County Prison has a grievance procedure. *See* Compl. at ECF p. 5. He admits to not filing a grievance about the matters raised in the complaint. *Id.*

The defendants filed a motion to dismiss the complaint on January 2, 2018. Doc. No. 11. Guiseppe filed a request for a 30-day extension to file a response to the motion to dismiss, which the clerk of court docketed on February 1, 2018. Doc. No. 12. The court determined that Guiseppe set forth good cause for an extension and granted the motion via an order entered on February 2, 2018. *See* Order, Doc. No. 13. Guiseppe then filed a response to the motion to dismiss, which the clerk of court docketed on March 8, 2018.[3] Doc. No. 14. The motion to dismiss is now ripe for disposition.

## II. DISCUSSION

In the motion to dismiss, the defendants assert multiple grounds as to why the court should dismiss this action with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s Compl. ("Defs.' Mem.").[4] First, they contend that Guiseppe has failed to identify any constitutionally protected right that they allegedly violated. *Id.* at 5-7. Second, to the extent that Guiseppe is possibly asserting a cause of action against them in their official capacities or against Chester County, they argue that he has failed to include any allegations to establish municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). *Id.* at 7-8. Third, they claim that Guiseppe has failed to allege any personal conduct on behalf of Warden

---

Guiseppe also alleges that he did not file a grievance because "[g]rievance forms are not available on the block. Inmates must fill out a[n] inmate request slip asking for grievance forms and wait for a response." *Id.* at ECF p. 6 (alterations to original). Nonetheless, Guiseppe asserts that "on 4/4/17[, he] sent request slips for a grievance to Counselor Hawthorne and Director Healy. Both did not respond to [his] request." *Id.* (alteration to original). Guiseppe includes a copy of an inmate request form dated April 6, 2017, and directed to "Warden/ Capt. Sergi" in which he requests an answer in writing as to why he did not receive a grievance form when he asked for one regarding the April 3, 2017 incident. *Id.* at Ex. 4-G.

[3] Guiseppe dated the response on March 3, 2018, which would have been within the 30-day period (plus the additional three days provided by Federal Rule of Civil Procedure 6(d) insofar as Guiseppe was served the court's February 2, 2018 order by mail under Rule 5(b)(2)(C)).

[4] The court notes that despite Guiseppe not referencing this in the complaint, the defendants indicate the charges which led to Guiseppe's incarceration, that he pleaded guilty to those charges (Guiseppe disputes the defendants' statement about the date of his plea), and that he was placed in protective custody on May 18, 2016, at his request. *See* Defs.' Mem. at 3-4.

McFadden or Deputy Warden Reed that caused his injuries. *Id.* at 8. Finally, to the extent that Guiseppe is arguing that the defendants' negligence caused his injuries, they contend that Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541 *et seq.* ("PSTCA"), immunizes them from those claims and Guiseppe has failed to allege any facts fitting within the narrow set of exceptions to this broad grant of governmental immunity. *Id.* at 8-9.

In response to these arguments, Guiseppe submitted a document that reads more like an amended complaint than it does a response to the motion to dismiss. *See generally* Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp."), Doc. No. 14. In particular, Guiseppe has added numerous allegations to those included in the original complaint. Some of those allegations include Guiseppe asserting that he filled out inmate request forms on numerous occasions and submitted them to the guards on duty and any supervisors whose names he acquired to inform them that Rowe and Rowe's cellmate were yelling through the vents and threatening Guiseppe and another inmate (in another cell). *See id.* at ECF p. 3. He states that this other threatened inmate also provided the guards with inmate request forms concerning the threats. *Id.*

Guiseppe also asserts that on April 6, 2017, he spoke to Captain Sergi to discuss the assault. *Id.* at ECF p. 4. During this conversation, Captain Sergi informed Guiseppe that, *inter alia* (1) the assault was not grievable and, as such, he would not give Guiseppe a grievance form to fill out, (2) the prison would not submit a police report concerning the assault, (3) Guiseppe would not be permitted to make a police report or use any phone at the prison to contact the police, (4) Guiseppe's injuries were not serious enough for him to go to the hospital so nothing else could be done for him, (5) Rowe's assault would be handled "in house" by the disciplinary officer and other prison staff, (6) the prison had the full video of the assault, and (7) the record of Rowe's assault would "follow [Rowe] to court for his murder and gun charges." *Id.* (alteration

5

to original). Captain Sergi also stated: "Sorry that you were attacked but it's over and done[;] move on with your life." *Id.* (alteration to original).

Regarding the causes of action that Guiseppe is asserting in this case, he has clarified them by explaining that he is contending that the Chester County Prison staff violated his constitutional rights by refusing to allow him to file a grievance about the assault through the prison's grievance system. *Id.* at ECF p. 6. They also refused to allow him to reach the police to file charges against Rowe for the assault.[5] *Id.* Thus, he claims that the defendants are purportedly denying him access to the courts in violation of his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. *Id.*

In addition, Guiseppe indicates that he is claiming that the prison staff failed to keep him free from harm in violation of the Eighth Amendment by placing violent offenders who were in "Administrative Custody" on the "Protective Custody" block with him.[6] *Id.* at ECF pp. 7, 8. He is apparently claiming that the prison staff failed to protect him despite being warned about the threats of physical harm against him and other inmates. *Id.* He supports these claims by noting that (1) the prison returned Rowe to the Protective Custody block despite having assaulted him, and (2) other Administrative Custody inmates apparently assaulted other inmates in the Protective Custody block. *Id.* Guiseppe asserts that these instances of conduct show that the prison does "not keep prisoners free from [assaults] even after being informed that there is a substantial risk of inmate assaults."[7] *Id.*

---

[5] Guiseppe indicates that despite the prison staff's refusal to allow him to file charges, he has attempted to press charges with the help of his family. *See* Pl.'s Resp. at ECF p. 6.

[6] Guiseppe states that on May 18, 2016, the prison relocated him (at his request) to prevent any other inmates from assaulting him due to the nature of the charges against him which were posted on social media. *See* Pl.'s Resp. at ECF p. 1.

[7] He also references an incident from June 2007 when two guards purportedly allowed an inmate to attack another inmate and then falsified prison reports in a cover up attempt. *Id.* at ECF p. 7.

6

As discussed in more detail below, while Guiseppe has appropriately attempted to add, support, and clarify his allegations contained in the complaint, the proper vehicle for him to do so is in an amended complaint and not in a brief in response to a motion to dismiss. His submission does not in any way specifically address the deficiencies identified in the motion to dismiss. Nonetheless, because he is *pro se*, is asserting a violation of his civil rights in an action under section 1983, and appears to have at least one plausible claim contained in his response, the court will grant the motion to dismiss, but give him leave to file an amended complaint that contains the factual allegations in his response and particularly identifies how each named defendant purportedly violated his constitutional rights.

### A.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

7

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Third Circuit employs a three-step approach to evaluate whether a complaint satisfies the *Twombly*/*Iqbal* standard:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal footnote omitted).

## B. Analysis

"Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (per curiam) (citing 42 U.S.C. § 1983). "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Benn v. Universal Health Sys.*, 371 F.3d 165, 169-70 (3d Cir. 2004)). "Accordingly, there can be no cause of action under

§ 1983 absent violation of a right secured by the Constitution or the laws of the United States."

*Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244 (3d Cir. 2005).

When evaluating section 1983 claims,

"[t]he first step . . . is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 1714 n.5, 140 L.Ed.2d 1043 (1998)). Next, a plaintiff must demonstrate a defendant's "personal involvement in the alleged wrongs." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct. *Id.* Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive. *Baker v. Monroe Twp.,* 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode,* 845 F.2d at 1201 n.6. A plaintiff "must portray specific conduct by state officials which violates some constitutional right." *Gittlemacker v. Prasse,* 428 F.2d 1, 3 (3d Cir. 1970).

*Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

Here, the court essentially agrees with all of the defendants' arguments contained in the motion to dismiss. Although Guiseppe's response would alleviate some of these concerns if the factual allegations contained therein were included in the original complaint, the court cannot ignore that the allegations are not included in the complaint. As for the motion to dismiss, the defendants correctly point out that Guiseppe has failed to assert facts in the complaint which would plausibly establish that they violated any of his constitutional rights. For example, although Guiseppe alleges that Rowe assaulted him and that the assault occurred close to the guards' control tower, there are no allegations that the guards (and it is unclear whether these guards are among the ten fictitious defendants) were aware of or should have been aware of the ongoing fight. In fact, although Guiseppe has attempted to clarify his claims in his response to the motion to dismiss, there is no allegation (at least as far as the court can discern) that he is

asserting that the guards in the control tower were aware of the assault and were deliberately indifferent insofar as they failed to promptly act. And, there are no allegations in the complaint that anyone at the prison knew that Rowe was a threat to Guiseppe prior to the assault.

The court recognizes that prisoners have the right to be free from physical attack and injury caused by other inmates insofar as it is a liberty interest protected by the Due Process Clause. *See Davidson v. O'Lone*, 752 F.2d 817, 821-22 (3d Cir. 1984), *aff'd sub nom. Davidson v. Cannon*, 474 U.S. 344 (1986). For an inmate such as Guiseppe to state a plausible claim for damages

> against a prison official for failure to protect from inmate violence, [he] must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm.

*Bistrand v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (alteration to original) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Regarding deliberate indifference, it is a subjective standard in that "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* Thus, a plaintiff must show that the defendant was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it. *See, e.g., Farmer*, 511 U.S. at 837; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

There are simply no allegations in the complaint which would show deliberate indifference by any of the named defendants. While it is possible with the additional factual allegations included in the response that Guiseppe can allege such facts, the complaint does not contain the necessary factual allegations at this point. At bottom, Guiseppe has failed to state any plausible claim for a constitutional violation against the defendants in the complaint.

Regarding the defendants' third contention, they correctly point out that there are no allegations in the complaint that Warden McFadden and Deputy Warden Reed were personally involved in any improper conduct which caused Guiseppe to suffer an injury. To sustain a claim for individual liability against these defendants, Guiseppe must plead their "participation or actual knowledge and acquiescence . . . with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are no such allegations in the complaint.[8]

As for the defendants' second contention, to the extent that Guiseppe is asserting official capacity claims against Warden McFadden or Deputy Warden Reed, he must be seeking to proceed under *Monell*. These official capacity claims "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55).

Regarding liability of municipalities and local governments under section 1983, they

> may be liable . . . if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (citing *Monell*, 436 U.S., at 665–683, 98 S.Ct. 2018). They are not vicariously liable under § 1983 for their employee's actions. See *id.*, at 691, 98 S.Ct. 2018; *Canton*[ *v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989);] *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases).
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S., at 691, 98 S.Ct. 2018; see *id.*, at 694, 98 S.Ct. 2018. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. See *ibid.*; *Pembaur*, *supra*, at 480–481, 106 S.Ct. 1292; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur*, *supra*, at 479–480, 106 S.Ct. 1292.

---

[8] The court also notes that the factual assertions in the response appear to not specifically identify personal wrongdoing by Warden McFadden or Deputy Warden Reed.

11

*Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (final alteration in original) (emphasis in original).

Under *Monell*, a plaintiff may hold a municipality liable under section 1983 only where the plaintiff establishes that (1) the municipality had a policy, custom or practice, (2) the policy, custom, or practice amounted to deliberate indifference to the plaintiff's constitutional rights, and (3) the policy was the moving force behind the constitutional violation. *See Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (citing *Monell*, 436 U.S. at 389-91). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur*, 475 U.S. at 481. "Customs" are practices so permanent and well settled as to virtually constitute law. *Monell*, 436 U.S. at 691. Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

Here, Guiseppe has not identified any policy, custom, or practice in the complaint that would be sufficient to possibly establish *Monell* liability. Although it appears that he is possibly trying to do so in his response when he asserts that the prison has a history of ignoring prisoner complaints about placing violent offenders in the Protective Custody block, those types of allegations are not included in the complaint.

As for the defendants' final argument, it does not appear that Guiseppe is asserting a state law negligence claim against them as he has not indicated as such in his response to the motion to dismiss. Therefore, the court need not address this part of the motion.[9]

### C. Leave to Amend

A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). In particular, the court notes that "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

Here, although the defendants are seeking to have the court dismiss the complaint with prejudice, *see* Defs.' Proposed Order accompanying Motion to Dismiss, the court would be compelled to permit Guiseppe at least one opportunity to amend his complaint even without the allegations contained in his response to the motion to dismiss. Having received this response, and after seeing the additional factual allegations Guiseppe would seek to include, the court is compelled to give him an opportunity to rectify his initial pleading deficiencies by filing an amended complaint.

### III. CONCLUSION

All of the arguments raised in the motion to dismiss are essentially meritorious. Guiseppe has failed to include sufficient allegations in the complaint to identify a

---

[9] To the extent that Guiseppe was asserting such a negligence claim against the defendants, it appears that the PTSCA would bar the claim. The PTSCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. Although section 8542 of the PTSCA provides certain exceptions to the general rule, Guiseppe has not included any allegations that would fall within any of the exceptions. *See* 42 Pa. C.S. § 8542 (providing "[e]xceptions to governmental immunity").

constitutionally protected right that the defendants violated; he failed to include any allegations that would permit *Monell* liability against the defendants in their official capacities; he has failed to allege any personal involvement by Warden McFadden or Deputy Warden Reed in any purported constitutional violations; and, to the extent that he is asserting a negligence claim under Pennsylvania law, the PTSCA appears to bar those claims against the defendants. Nonetheless, Guiseppe has provided many more pertinent details relating to his claims in his response to the motion to dismiss, and he is entitled to an opportunity to file an amended complaint to rectify the deficiencies the defendants and the court have found with his original complaint. As such, while the court will grant the motion to dismiss, the court will give Guiseppe leave to file an amended complaint.

In the amended complaint, Guiseppe must plead sufficient, plausible facts to support his purported causes of action. If he is asserting that any of the defendants are individually liable to him, he must plead how those defendants were personally involved in the allegedly wrongful conduct. To the extent he is seeking liability against the defendants in their official capacities (as such claims would essentially lie against the county), he must plead sufficient facts to establish *Monell* liability against the defendants.

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.